**MICHAEL N. FEUER,** City Attorney (SBN 111529x)
**THOMAS H. PETERS,** Chief Assistant City Attorney (SBN163388)
**CORY M. BRENTE,** Supervising Assistant City Attorney
**WENDY SHAPERO**, Deputy City Attorney (SBN 198739)
200 North Main Street
6th Floor, City Hall East
Los Angeles, CA  90012
Email: Wendy.Shapero@lacity.org
Phone No.: (213) 978-7029, Fax No.: (213) 978-8785

Attorneys for Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, CHARLIE BECK, SHANNON PAULSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANGRESS, a non-profit corporation, DEBORAH BURTON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; CENTRAL CITY EAST ASSOCIATION; DOWNTOWN INDUSTRIAL DISTRICT BUSINESS IMPROVEMENT DISTRICT; CHARLIE BECK, in his official capacity; SHANNON PAULSON, individually and in her official capacity; ESTELA LOPEZ, as an individually) DOES 1-10.<br><br>Defendants. | **CASE NO. CV14-1743 SVW (MANx)**<br><br>**DEFENDANT CITY OF LOS ANGELES, ET AL.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[FRCP 12 b(6)]**<br><br>**[Proposed Order filed concurrently herewith]**<br><br>Date:          May 12, 2014<br>Time:         1:30 p.m.<br>Courtroom:  6 |

TO PLAINTIFFS AND TO THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on May 12, 2014, at 1:30 p.m., in Courtroom 6 before the Honorable Stephen V. Wilson, Judge of the United States District Court, located at 312 N. Spring Street, Los Angeles, California 90012, Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, CHARLIE BECK,

1  SHANNON PAULSON ("Defendants") will move this Court to dismiss portions of

2  Plaintiffs' First Amended Complaint on the grounds that it fails to state a claim for relief

3  for the following reason:

4  **1.    All Claims for Relief Seeking to Litigate Matters Prior to the Expiration of the**

5        **Statute of Limitations**

6  Plaintiffs fail to state a claim for relief for incidents which fall outside the two-year

7  statute of limitations.

8  **2.    Seventh Claim for Relief for Violation of a Mandatory Duty under**

9        **Government Code section 815.6 by all Plaintiffs against Defendant City of Los**

10       **Angeles**

11 To the extent they seek damages, CANGRESS fails to state a claim for relief for

12 violation of Civil Code section 52.1 based on its failure to comply with the California

13 Tort Claims Act

14 **3.    Sixth Claim for Relief for Violation of Civil Code section 52.1 and Seventh**

15       **Claim for Relief for Violation of a Mandatory Duty under Government Code**

16       **section 815.6**

17 Deborah Burton fails to state a claim relief based on the immunity provided under

18 Government Code section 821.6

19 **4.    Seventh Claim for Relief for Violation of a Mandatory Duty under**

20       **Government Code section 815.6 by all Plaintiffs against Defendant City of Los**

21       **Angeles**

22 Plaintiffs fail to state a claim for violation of a mandatory duty because Article I,

23 sections 1, 2, 7, and 13 of the California Constitution do not impose a mandatory duty

24 upon public entities to protect individuals' freedom of speech and due process rights.

25 Local Rule 7-3 was complied with through telephonic conference of counsel on

26 March 24, 2014 and by written correspondence and March 19, 2014.

27 The Motion to Dismiss portions of the First Amended Complaint will be based

28 upon this notice, the accompanying Memorandum of Points and Authorities, the Court's

1  file, and such further oral and/or documentary evidence as may be presented at the time of

2  the hearing.

3

4  DATED: April 9, 2014                     Respectfully submitted,

5                                           **MICHAEL N. FEUER**, City Attorney
                                            **THOMAS H. PETERS,** Chief Assistant City Attorney
6                                           **CORY M. BRENTE**, Assistant City Attorney

7                                           By _____/S/_____
                                                **WENDY SHAPERO,** Deputy City Attorney
8
                                            Attorneys for Defendants City of Los Angeles, et al.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ......................... 1

1.  Introduction ....................................................... 1

2.  Allegations of the First Amended Complaint  ......................... 1

3.  Plaintiffs May Not Litigate the Merits of Incidents Falling
    Outside the Two-Year Statute of Limitations ........................ 3

4.  LA CAN's State Law Claims must be Dismissed Based on their
    Failure to Comply with the California Tort Claims Act ................. 4

5.  Plaintiffs Fail to State a Claim Against the City of Los Angeles Based
    on an Alleged Violation of a Mandatory Duty Under Government Code
    Section 815.6 ...................................................... 6

6.  Burton's State Law Claims must Be Dismissed under the Broad
    Immunity Provided by Government Code Section 821.6 .................. 9

7.  Conclusion ....................................................... 11

TABLE OF AUTHORITIES

Page

CASES:

Amylou R. v. County of Riverside,
    28 Cal.App.4th 1205 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Burton and Richardson v. City of Los Angeles, et al.,
    CV 09-8636 DDP (RZx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cangress, et al. v. City of Los Angeles, et al.,
    CV08-01191 DDP(RZx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

City of San Jose v. Superior Court,
    12 Cal.3d 447, 454 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Clausing v. San Francisco Unified School District,
    221 Cal. App. 3d 1224 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Collier v. City of Pasadena,
    142 Cal. App. 3d 917, 924 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cope v. Anderson,
    331 U.S. 461, 464, 91 L. Ed. 1602, 67 S. Ct. 1340 (1947) . . . . . . . . . . . . . . 3

CPR for Skid Row, Khan, White v. City of Los Angeles,
    CV 11-6274 JFW (Cwx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

County of Los Angeles v. Superior Court (West),
    181 Cal.App.4th 218 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Edgington v. County of San Diego,
    118 Cal.App.3d 39, 43 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fink v. Shedler,
    192 F.3d 911, 914 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Gatto v. County of Sonoma,
    98 Cal.App.4th 744 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Gilbert v. City of Cambridge,
    932 F.2d 51, 57-58 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Greyhound v. County of Santa Clara,
    187 Cal. App. 3d 480, 488 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Knox v. Davis,
    260 F.3d 1009, 1012-13 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Leger v. Stockton Unified School Dist.,
    202 Cal. App. 3d 1448, 1455 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Levald, Inc. v. City of Palm Desert,
    998 F.2d 680, 688 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Lineaweaver v. Southern Cal. Rapid Transit Dist.,
    139 Cal. App. 3d 738 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Lozada v. City and County of San Francisco,
    145 Cal. App. 4th 1139, 1170 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Morris v. County of Marin,
    18 Cal. 3d 901, 908 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Randle v. City and County of San Francisco,
    186 Cal.App.3d 449, 456-57 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rason v. Santa Barbara City Housing,
    201 Cal.App.3d 817, 822 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Richardson v. City of Los Angeles, et al.
    CV 10-02473 DDP (RZx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Ridley v. City of San Francisco,
    272 Cal.App.2d 290, 292-93 (1969) (emphasis added) . . . . . . . . . . . . . . . . . 5

CODES:

Civil Code §52.1, 52.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10

Calif. Government Code
    Section 815.2 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Section 815.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 8, 9
    Section 821.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10
    Section 911.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Section 945.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
    Section 946.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Calif. Code of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Calif. Tort Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Unruh Civil Rights Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Constitution, Article I, Section 1, 2, 7, 13, 26 . . . . . . . . . . . . . . 6, 7, 8, 9, 11

vi

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.    Introduction**

This case is the fourth[1] lawsuit in six years filed by CANGRESS (aka "LA CAN") seeking to vindicate its members' First and Fourteenth Amendment rights to free speech and assembly by limiting LAPD's ability to enforce criminal laws.  Of these lawsuits, all have a similar aim: either LA CAN tries to enjoin LAPD from interfering with their First Amendment rights or LA CAN challenges the constitutionality of a statute relied on by the LAPD to make arrests of its members.  Every time that a judge or jury has been asked to determine whether the City of Los Angeles or LAPD officers violated LA CAN or its members' civil rights, the answer has been "no."

Unable to take no for an answer, LA CAN once again presents the same claims and seeks the same remedies.   However, LA CAN and Deborah Burton cast their net too wide.  The City of Los Angeles, Los Angeles Police Department, Charlie Beck, and Shannon Paulson move to dismiss those portions of the First Amended Complaint barred by the statute of limitations, barred by non-compliance with the tort claims statutes, negated by immunity under Government Code section 821.6, or which simply lack a legal foundation.

**2.    Allegations of the First Amended Complaint**

LA CAN is an advocacy group for the homeless in the Skid Row area of downtown Los Angeles.  Deborah Burton ("Burton") is one of its members.  Plaintiffs allege the Los Angeles Police Department ("LAPD") works together with the Central City East Association ("CCEA"), a business improvement district in the downtown area, to violate

---

[1] The prior lawsuits were: <u>Cangress, et al. v. City of Los Angeles, et al.,</u> CV08-01191 DDP(RZx)(Defense Verdict); <u>Burton and Richardson v. City of Los Angeles, et al.,</u> CV 09-8636 DDP (RZx)(Dismissed With Prejudice); <u>Richardson v. City of Los Angeles, et al.</u> CV 10-02473 DDP (RZx)(Defense Verdict); <u>CPR for Skid Row, Khan, White v. City of Los Angeles,</u> CV 11-6274 JFW (CWx)(Motion for Summary Judgment Granted in favor of the City of Los Angeles)

1 | civil rights in order to suppress speech.  (FAC, ¶ 6).

2 |     LA CAN alleges it has been subjected to a campaign of harassment for years.  In

3 | particular, since the 2005 inception of its "community watch" program, which purports to

4 | document alleged police misconduct on the streets of Skid Row, Plaintiffs contend LAPD

5 | orders LA CAN members to move off sidewalks, blocks members' cameras, and detains,

6 | threatens to arrest, and arrests them.  (FAC, ¶ ¶ 33 & 35).  LA CAN claims the alleged

7 | harassment peaked with the prosecution of Burton based supposedly on her advocacy

8 | during a Skid Row walk on July 6, 2011   (FAC, ¶ 81).

9 |     Plaintiffs list myriad alleged unlawful practices going back years before the March

10 | 10, 2014 filing of this Complaint.  For example, in the summer of 2007, the LAPD parked

11 | a car in front of LA CAN's office.  (FAC, ¶ 39).  In 2007, LAPD Senior Lead Officer

12 | Deon Joseph purportedly defamed LA CAN on the LAPD website.  (FAC, ¶ ¶ 41-47).

13 | On April 7, 2010, former City Attorney Trutanich allegedly disparaged LA CAN in the

14 | press.  (FAC, ¶ 40).

15 |     In fact, the only alleged unlawful acts occurring within two years of the filing of

16 | the present lawsuit are the following:

17 | 1. the April 2, 2013 arrest of LA CAN member Wayne Henderson (FAC, ¶ 51);

18 | 2. LA CAN's exclusion from the Police Commission Hearing and the City Attorney's

19 | Office on May 22, 2013 (FAC, ¶ ¶ 52-53);

20 | 3. the May 22, 2013 arrest of Thelmy Perez (FAC, ¶ ¶ 54-55);

21 | 4. the late May and June 2012 protests outside the CCEA's office (FAC, ¶ 60);

22 | 5. the June 2012 City of Los Angeles' street clean-up (FAC, ¶ 61);

23 | 6. the November 2012 protests of CCEA's Breakfasts with the Mayoral Candidates (FAC,

24 | ¶ 62);

25 | 7. the July 2012 filing of criminal charges against plaintiff Burton for her activities at a

26 | July 6, 2011 Skid Row Walk (FAC, ¶ ¶ 64-90).

27 |     Cangress does not allege it filed a claim for damages with the City of Los Angeles.

28 | ///

3. **Plaintiffs May Not Litigate the Merits of Incidents Falling Outside the Two-Year Statute of Limitations**

For actions under 42 U.S.C. 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, except to the extent any of these laws is inconsistent with federal law. <u>Fink v. Shedler</u>, 192 F.3d 911, 914 (9th Cir. 1999). In California, the statute of limitations for personal injury actions is two years from accrual. Cal. Civ. Proc. Code § 335.1. A claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. <u>Knox v. Davis</u>, 260 F.3d 1009, 1012-13 (9th Cir. 2001).

Plaintiffs' First Amended Complaint lists various incidents outside the two-year statute of limitations which they knew or should have known gave rise to alleged violations of the First and Fourteenth Amendments. For example, Plaintiffs allege that in the summer of 2007 the LAPD parked a patrol car outside LA CAN's office to intimidate its members. (FAC, ¶ 39). Also in 2007, LAPD Senior Lead Officer Deon Joseph allegedly engaged in a campaign to disparage LA CAN through blog posts and leaflets. (FAC, ¶¶ 41-47). On May 21, 2010, LA CAN members were allegedly attacked by the LAPD at City Hall. (FAC, ¶ 56). Since Plaintiffs may only prosecute claims which accrued no more than two years before the filing of this Complaint on March 10, 2014, all of these incidents are time-barred.

Plaintiffs will likely argue these incidents form the pattern of constitutional violations which are necessary to prove their injunctive relief claims. Despite applying an equitable label to their claims, Plaintiffs cannot avoid the statute of limitations. In <u>Levald, Inc. v. City of Palm Desert</u>, 998 F.2d 680, 688 (9th Cir. 1993), the Ninth Circuit rejected the plaintiff's argument that the statute of limitations did not bar his takings claim because he sought a declaratory judgment. Relying on the First Circuit's decision in <u>Gilbert v. City of Cambridge</u>, 932 F.2d 51, 57-58 (1st Cir. 1991) (citing <u>Cope v. Anderson</u>, 331 U.S. 461, 464, 91 L. Ed. 1602, 67 S. Ct. 1340 (1947), the Court wrote:

To prevent plaintiffs from making a mockery of the statute of limitations by

1  the simple expedient of creative labeling - styling an action as one for

2  declaratory relief rather than for damages - courts must necessarily focus

3  upon the substance of an asserted claim as opposed to its form. It is settled,

4  therefore, that where legal and equitable claims coexist, equitable remedies

5  will be withheld if an applicable statute of limitations bars the concurrent

6  legal remedy....Therefore, if 'a claim for declaratory relief could have been

7  resolved through another form of action which has a specific limitations

8  period, the specific period of time will govern.'

9  Levald, supra, 998 F.2d at 688-89 (citations omitted).  Plaintiffs cannot escape the

10  limitations period merely by styling this lawsuit as one for equitable relief because

11  damages are sought as well.  (FAC,  p. 3:1-3, Prayer for Relief).  Thus, Plaintiffs may not

12  litigate the merits of any incident prior to March 10, 2012.

13      Nor are Plaintiffs entitled to equitable tolling.  Under California law, courts apply a

14  three-pronged test for equitable tolling.   The three elements are: (1) timely notice to the

15  defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering

16  evidence to defend against the second claim; and (3) good faith and reasonable conduct

17  by the plaintiff in filing the second claim.  Collier v. City of Pasadena, 142 Cal. App. 3d

18  917, 924 (1983).  Plaintiffs fail to allege any facts supporting equitable tolling to extend

19  the statute of limitations.  As such, Defendants are entitled to dismissal concerning any

20  incident prior to March 10, 2012.

21  **4.    LA CAN's State Law Claims must Be Dismissed Based on their Failure to**

22  **        Comply with the California Tort Claims Act**

23      The Seventh Claim for Relief for violation of a mandatory duty under Government

24  Code § 815.6 is brought by LA CAN and Burton against all Defendants.  To the extent

25  LA CAN seeks damages for the Seventh Claim for Relief, its failure to comply with the

26  California Tort Claims Act bars entitles the City defendants to dismissal.

27      To maintain a lawsuit against a government entity for state causes of action, a claim

28  for damages must be filed initially with the government entity. Cal. Gov. Code § 945.4;

4

1    <u>Rason v. Santa Barbara City Housing</u>, 201 Cal.App.3d 817, 822 (1988).  In enacting the

2    Tort Claims Act, the Legislature prescribed the time and manner for filing claims against

3    a public entity and the conditions under which it may be sued.  <u>Edgington v. County of</u>

4    <u>San Diego</u>, 118 Cal.App.3d 39, 43 (1981).  Noncompliance with the Government Code

5    provisions **bars** a subsequent suit.  Cal. Gov. Code § 945.4; <u>City of San Jose v. Superior</u>

6    <u>Court</u>, 12 Cal.3d 447, 454 (1974); <u>Ridley v. City of San Francisco</u>, 272 Cal.App.2d 290,

7    292-93 (1969) (emphasis added).

8         Where the claimant does not file a claim within the six-month claim period,

9    Government Code section 911.4 allows for written application to be made to the public

10   entity for leave to present a late claim.  However, "[t]he application shall be presented to

11   the public entity . . . within a reasonable time not to exceed one year after the accrual of

12   the cause of action . . ." Cal. Gov. Code§ 911.4, subd. (b). If the late claim application is

13   denied, a plaintiff may petition the court for relief from claims filing requirements. Cal.

14   Gov. Code § 946.6. The petition for an order for relief from Government Code section

15   945.6, must be filed within 6 months after the late claim application is denied by the

16   public entity. Cal. Gov. Code, § 946.6, subd. (b). The six-month period is mandatory

17   rather than discretionary and properly understood as a statute of limitations. <u>Lineaweaver</u>

18   <u>v. Southern Cal. Rapid Transit Dist.</u>, 139 Cal. App. 3d 738 (1983).  When the underlying

19   application to file a late claim has been filed beyond the limitation period for filing an

20   application, the court is without jurisdiction to grant relief under Government Code

21   section 946.6. <u>Greyhound v. County of Santa Clara</u>, 187 Cal. App. 3d 480, 488 (1986).

22        LA CAN does not allege compliance with the California Tort Claim Act.  LA CAN

23   will likely argue it seeks equitable relief which does not require a claim for damages.

24   However, a claim is required because the First Amended Complaint seeks an equal

25   interest in compensatory damages along with equitable relief.

26        In <u>Gatto v. County of Sonoma</u>, 98 Cal.App.4th 744 (2002), the court held "[t]he

27   claims filing requirement remains applicable to actions in which money damages are not

28   incidental or ancillary to any specific relief that is also sought, but the primary purpose of

                                            5

1  the action." Id. at 762. Gatto concluded a claim was required because the plaintiff sought

2  compensatory damages, attorney's fees, and punitive damages. In addition, the plaintiff's

3  complaint did not allege the damages were subsidiary to the equitable relief. "Damages

4  are the first thing mentioned in the title of his complaint and the prayer for relief, and the

5  title of the complaint cites the specific provisions of the Unruh Civil Rights Act creating

6  liability for actual damages (§ 52, subd. (a)) and authorizing individuals to institute civil

7  actions for such damages. (§ 52.1, subd. (b.).)." Id. at 763; See also Lozada v. City and

8  County of San Francisco, 145 Cal. App. 4th 1139, 1170 (2006)(finding request for civil

9  penalties factored into conclusion that complaint primarily sought damages rather than

10  injunctive relief).

11       LA CAN's interest in damages is not subsidiary to its request for equitable relief.

12  The first sentence of the First Amended Complaint states LA CAN and Deborah Burton

13  seek compensatory damages along with equitable relief. (FAC,¶ 3:1-3). The Prayer for

14  Relief seeks "[c]ompensatory, general, and specific damages in an amount according to

15  proof and permitted by law." (FAC,¶ 131). LA CAN also seeks punitive damages and

16  attorneys' fees. (FAC, ¶¶ 134-135). Finally, the First Amended Complaint does not

17  allege LA CAN's interest in damages is incidental to their prayer for relief. Based on the

18  multiple requests for damages repeated throughout the Complaint, it is clear LA CAN's

19  interest in damages is not subsidiary to the equitable relief. Accordingly, LA CAN's

20  failure to file a timely claim for damages requires dismissal of the Seventh Claim for

21  Relief.

22  **5.    Plaintiffs Fail to State a Claim Against the City of Los Angeles Based on an**

23       **Alleged Violation of a Mandatory Duty Under Government Code Section**

24       **815.6**

25       The  Seventh Claim for Relief seeks liability against the City of Los Angeles and

26  the LAPD based on Government Code section 815.6's alleged mandatory duty to

27  implement the protections of the California Constitution. Plaintiffs allege constitutional

28  provisions under Article I, section 26 "are mandatory and prohibitory." Plaintiffs fail to

1    identify which constitutional provisions impose this mandatory duty to act.  Defendants

2    assume Plaintiffs intended to rely on Article I, sections 1,[2] 2[3], 7[4] and 13[5] based on the

3    allegations in the Sixth Claim for Relief.  However, Article I, sections 1, 2, 7, and 13 do

4    not impose a mandatory duty on public entities to protect citizens' free speech or due

5    process rights.

6         "As used in section 815.6, the term 'mandatory' refers to an obligatory duty which

7    a governmental entity is required to perform, as opposed to a permissive power which a

8    governmental entity may exercise or not as it chooses." Morris v. County of Marin, 18

9    Cal. 3d 901, 908 (1977).  Clausing v. San Francisco Unified School District, 221 Cal.

10   App. 3d 1224 (1990), is the controlling authority regarding whether California

11   constitutional provisions impose a mandatory duty on public entities pursuant to

12   Government Code section 815.6.  Clausing involved an appeal from an order sustaining a

13   demurrer without leave to amend.  Id. at 1229.  Plaintiffs sought damages and equitable

14   relief against the school district for its failure to discharge its mandatory duty under

15   _____

16        [2] Article I, § 1, entitled, "[i]nalienable rights" provides, "[a]ll people are by nature

17   free and independent and have inalienable rights. Among these are enjoying and

18   defending life and liberty, acquiring, possessing, and protecting property, and pursuing
     and obtaining safety, happiness, and privacy."

19
          [3] Article I, § 2, entitled, "[s]peech and press" states in part, "(a) [e]very person may

20   freely speak, write and publish his or her sentiments on all subjects, being responsible

21   for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

22        [4] Article I, § 7 entitled, "[d]ue process; Equal protection; Privileges and

23   immunities" states in relevant part, "(a) [a] person may not be deprived of life, liberty, or
     property without due process of law or denied equal protection of the laws..."
24
          [5] Article I, § 13 entitled, "[s]earch and seizure" provides, "[t]he right of the people
25   to be secure in their persons, houses, papers, and effects against unreasonable seizures

26   and searches may not be violated; and a warrant may not issue except on probable cause,

27   supported by oath or affirmation, particularly describing the place to be searched and the
     persons and things to be seized."
28

                                              7

1   Article I, section 1 of the California Constitution to protect their privacy interests.  In

2   analyzing the question the Court set forth the legal framework:

3       The following rule has been consistently applied in California to determine

4       whether a constitutional provision is self-executing in the sense of providing

5       a specific method for its enforcement: "A constitutional provision may be

6       said to be self-executing if it supplies a sufficient rule by means of which the

7       right given may be enjoyed and protected, or the duty imposed may be

8       enforced; and it is not self-executing when it merely indicates principles,

9       without laying down rules by means of which those principles may be given

10      the force of law."

11  Id. at 1237 (citing Leger v. Stockton Unified School Dist., 202 Cal. App. 3d 1448, 1455

12  (1988)).

13      Clausing acknowledged Article I, section 1 was self-executing because it provided

14  a claim for equitable relief.  Id. at 1238.  However, the Court rejected the argument that

15  the section imposed a mandatory duty upon public entities which created damages

16  liability.  "[N]o case has ever held that California Constitution, article I, section 1,

17  imposes a mandatory duty on public entities to protect a citizen's right to privacy.  The

18  constitutional mandate is simply that the government is prohibited from violating that

19  rights; if it does, an aggrieved citizen may seek an injunctive remedy in court."  Id. at

20  1238.

21      Article I, sections 1, 2, 7, and 13 merely indicate principles prohibiting certain

22  government action.  They do not lay down rules "by means of which those principles may

23  be given the force of law."  See Leger v. Stockton, supra, 202 Cal. App. 3d 1455.

24  The lack of legal authority imposing a mandatory duty on a public entity to protect an

25  individuals' free speech, due process, and freedom from unlawful search and seizure

26  rights under Article I, sections 1, 2, 7, and 13 negates the viability of the Seventh Claim

27  for Relief.

28      Plaintiffs may argue they state a claim under Government Code section 815.6

1   because they seek equitable relief.  However, they also seek damages for violation of

2   Article I, sections 2, 3, and 7.  As set forth above, the Complaint begins and ends with

3   demands for compensatory relief, Burton seeks statutory penalties under Civil Code §

4   52.1, and they request punitive damages.  Nothing prevents Plaintiffs from obtaining

5   equitable relief if they can prove their claims.  Rather, Government Code section 815.6

6   and Article I sections, 1, 2, 7, and 13 are not the methods for doing so.  Accordingly, the

7   City of Los Angeles is entitled to dismissal with prejudice of the Seventh Claim for

8   Relief for violation of Government Code section 815.6.

9   **6.     Burton's State Law Claims must Be Dismissed under the Broad Immunity**

10          **Provided by Government Code Section 821.6**

11          Burton's Sixth Claim for Relief for Violation of Civil Code section 52.1 and her

12  Seventh Claim for Relief for violation of a mandatory duty under Government Code

13  section 815.6 must be dismissed under the immunity provided by Government Code

14  section 821.6.

15          Government Code section 821.6 provides, "[a] public employee is not liable for

16  injury caused by his instituting or prosecuting any judicial or administrative proceeding

17  within the scope of his employment, even if he acts maliciously and without probable

18  cause."  In turn, the City of Los Angeles is derivatively immune from malicious

19  prosecution claims.   Government Code section 815.2(b) states, "[e]xcept as otherwise

20  provided by statute, a public entity is not liable for an injury resulting from an act or

21  omission of an employee of the public entity where the employee is immune from

22  liability." Section 821.6 immunity applies to both prosecutors and police officers.  Randle

23  v. City and County of San Francisco, 186 Cal.App.3d 449, 456-57 (1986).  The immunity

24  also applies to a range of torts.  See Amylou R. v. County of Riverside, 28 Cal.App.4th

25  1205 (1994)(holding the county and its investigating officers were immune under

26  Government Code § 821.6 from various causes of action, including assault, negligence,

27  slander, and intentional and negligent infliction of emotional distress, in connection with

28  the investigation of the crime).

9

1     The broad scope of this immunity is borne out in the case of <u>County of Los</u>

2  <u>Angeles v. Superior Court (West)</u>, 181 Cal.App.4th 218 (2009), in which property seized

3  by the Los Angeles District Attorney's Office pursuant to a warrant was retained for a

4  prolonged period, or was not returned, or was irreparably damaged. No charges were ever

5  filed against the complainants, who asserted causes of action for, inter alia, violations of

6  state civil rights, breach of involuntary bailment, and injunctive relief. <u>Id</u>. at 222-24. The

7  court held summary judgment should have been granted as to all state causes of action,

8  concluding Section 821.6 immunity is not limited to malicious prosecution actions, but

9  rather applies whenever (1) the officers are employed by the government agency, (2) the

10 acts causing injury were committed by officers in instituting or prosecuting judicial

11 proceedings, and (3) the conduct was within the scope of the officers' employment. <u>Id</u>. at

12 229. The immunity extends to acts taken during an investigation before instituting

13 judicial proceedings, after the close of proceedings, and even if charges are never filed.

14 <u>Ibid</u>. With respect to the state civil rights claim under Civil Code section 52.1, despite no

15 charges being filed, the court found that "all of the acts – investigating, obtaining the

16 warrant, searching, seizing, retaining, and even damaging plaintiffs' property – were

17 committed as part of an investigation of crimes leading to prosecution in a judicial

18 proceeding." <u>Id</u>. at 230.

19     Burton's state law claims are based on her alleged malicious prosecution related to

20 her use of an air horn during the July 6, 2011 Skid Row Walk.  The First Amended

21 Complaint focuses on the conduct of LAPD Lt. Paulson who allegedly fabricated

22 evidence in an arrest report in order to cause the filing of criminal charges against her.

23 (FAC, ¶¶ 64-90).  Burton alleges Lt. Paulson is employed by the City of Los Angeles,

24 acted within the course and scope of her employment, and complains about acts taken in

25 instituting and prosecuting judicial proceedings against Burton.  Based on the broad

26 immunity under Government Code section 821.6, all of Burton's state law claims must be

27 dismissed without leave to amend.

28 ///

## 7.    Conclusion

Defendants request the Court dismiss with prejudice all claims related to conduct occurring prior to March 10, 2012 as time-barred; all state law claims brought by LA CAN based on its failure to comply with the California Tort Claims Act; Burton's state law claims under Government Code section 821.6; and the Seventh Claim for Relief for violation of a mandatory duty because the City of Los Angeles has no affirmative obligation to protect Plaintiffs' civil rights based on Article I, §§ 1, 2, 7, and 13 of the California Constitution.


DATED: April 9, 2014                 Respectfully submitted,

                                     **MICHAEL N. FEUER,** City Attorney
                                     **THOMAS H. PETERS,** Chief Assistant City Attorney
                                     **CORY M. BRENTE,** Assistant City Attorney


                                     By _____/S/_____
                                            **WENDY SHAPERO,** Deputy City Attorney

                                     Attorneys for Defendants City of Los Angeles, et al.